UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joshua Dyson Carraway,** | ) | COMPLAINT |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 4:25-cv-11583-JD |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Government Employees Insurance** | ) | |
| **Company a/k/a GEICO, and** | ) | |
| **The CCS Companies, d/b/a,** | ) | |
| **Credit Collection Services,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Joshua Dyson Carraway, for actual, statutory, and punitive damages, attorney's fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA"). Plaintiff also seeks actual and statutory damages, attorney's fees, and costs for Defendant, The CCS Companies' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* Finally, Plaintiff seeks compensatory and punitive damages for Defendants' violations of South Carolina common law set forth herein.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be

1

taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

## JURISDICTION AND VENUE

4.      This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

5.      Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendants transacted business in this division.

## PARTIES

6.      The Plaintiff, Joshua Dyson Carraway, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.

7.      Defendant Government Employees Insurance Company a/k/a GEICO ("GEICO") is headquartered in Chevy Chase, Maryland. Defendant GEICO may be served with process through its CEO, Todd Combs at 5260 Western Avenue, Chevy Chase, MD 20815. Defendant GEICO was in all respects and at all times relevant herein doing business in the state of South Carolina.

8.      Defendant The CCS Companies d/b/a Credit Collection Services ("CCS") is headquartered at 725 Canton Street, Norwood, MA 02062-2679, and may be served with process through its President and CEO, Steven Sands. Defendant CCS is a "debt collector" as that term is defined in 15 U.S.C. §1692a(6) and is regularly engaged in the collection of

debts.

9.     Defendants GIECO and CCS each acted in concert together with the other, participated in, and contributed to the damages caused to the Plaintiff.

10.    All acts done by Defendant CCS were done on their own behalf and on the behalf of Defendant GEICO.

11.    Defendant GEICO acted as principal over its agent, Defendant CCS, and maintained control over all actions taken by Defendant CCS including all actions to collect on the Account and all reporting done to the credit reporting agencies.

## FACTUAL ALLEGATIONS

12.    Sometime prior to January 3, 2024, Defendant GEICO wrongfully placed a $360.18 past due account owed by another GEICO insured by the name of Joshua Knox, in Plaintiff's name.

13.    This Account was reported as CCS Collections for GEICO Indemnity Co., Account No. xxxxx23 (hereinafter the "Account").

14.    In January 2024, Plaintiff's car insurance premium with Defendant GEICO increased from $53.00 per month to over $200.00 per month. In order to determine why his insurance payment increased so drastically, Plaintiff contacted Defendant GEICO. At that time, Plaintiff learned that Defendant GEICO had wrongfully placed a past due account for a consumer named Joshua Knox on Plaintiff's account, or had mixed and/or combined Plaintiff's insurance file with that of Joshua Knox.

15.    Thereafter, Defendant GEICO sold, assigned, and/or transferred the Account which

it had wrongfully put in Plaintiff's name to Defendant CCS for collection.

16. Upon receipt of the Account, Defendant CCS began reporting the Account as belonging to Plaintiff to the credit reporting agencies. As a result, not only was the inaccurate Account added to Plaintiff's credit reports, but also the incorrect name of "Joshua Knox" and several addresses which belonged to Knox.

17. When the Account was added to Plaintiff's Equifax credit file, Plaintiff's credit score dropped 120 points from 638 to 518.

18. When the Account was added to Plaintiff's Experian credit file, Plaintiff's credit score dropped 117 points from 638 to 521.

19. When the Account was added to Plaintiff's TransUnion credit file, Plaintiff's credit score dropped 128 points from 651 to 523.

20. On January 23, 2024, at the advisement of Defendant GEICO, Plaintiff filed a police report with the Florence County Sheriff's Office regarding the Account.

21. On or about January 23, 2024, Plaintiff pulled his Equifax credit report and discovered that Defendant CCS was reporting the Account as belonging to Plaintiff on his Equifax credit report. As a result, Plaintiff's Equifax credit report now also contained multiple addresses at which he had never lived.

22. That same day, Plaintiff obtained a copy of his TransUnion credit report. Defendant CCS was reporting the Account on Plaintiff's TransUnion report as belonging to Plaintiff. As a result, Plaintiff's TransUnion credit report now also included several addresses at which he never lived, as well as numerous phone numbers that were not his.

23. On or about January 29, 2024, Plaintiff obtained a copy of his Experian credit report and discovered that, as a result of Defendant CCS reporting the Account in the name of Joshua Knox as belonging to Plaintiff, Plaintiff's Experian credit report was now fully mixed with a consumer named Joshua Knox. Reporting on Plaintiff's Experian credit report were several variations of the name Joshua "Knox," ten (10) addresses at which he never lived, two (2) phone numbers that were not his, a Social Security number that was not his, an employer for which he had never worked, hard inquires that were not his, and multiple accounts that did not belong to him, including the Account.

24. On or about February 21, 2024, Plaintiff mailed a dispute letter to Equifax via certified mail ("First Equifax Dispute Letter"). In his dispute, Plaintiff informed Equifax that the Account did not belong to him. Plaintiff also disputed two incorrect addresses at which he had never lived. Equifax received Plaintiff's First Equifax Dispute Letter on February 25, 2024, and thereafter, forwarded a copy to Defendant CCS.

25. On or about February 21, 2024, Plaintiff mailed a dispute letter to Experian via certified mail ("First Experian Dispute Letter"). Plaintiff's dispute included all of the incorrect names which were variations of the name Joshua Knox; the incorrect social security number; the incorrect addresses; the incorrect telephone numbers; the incorrect employment information; and all of the hard inquiries and accounts that did not belong to him, including the Account. Experian received Plaintiff's First Dispute Letter on March 1, 2024, and thereafter forwarded same to Defendant CCS.

26. On or about February 21, 2024, Plaintiff mailed a dispute letter to TransUnion via

certified mail ("First TransUnion Dispute Letter"). In this letter, Plaintiff disputed the incorrect addresses, the incorrect telephone numbers, and the Account as not belonging to him. TransUnion received Plaintiff's First Dispute Letter on February 28, 2024, and thereafter forwarded same to Defendant CCS.

27. On February 29, 2024, Equifax forwarded an Automated Consumer Dispute Verification ("ACDV") to Defendant CCS. In the ACDV, Equifax notified Defendant CCS that Plaintiff disputed the Account as not his and also disputed the addresses of Dingle Drive and Palm Street.

28. In response to the ACDV, Defendant CCS verified the Account as accurately reporting as belonging to Plaintiff. As a result, the Account continued to be reported as a collection account belonging to Plaintiff on his Equifax credit reports.

29. Additionally, because Defendant CCS continued to report the Account with the disputed Dingle Drive address, Equifax refused to provide Plaintiff a copy of his updated credit report because his address did not match the address reported for the Account.

30. Experian and TransUnion also did not provide Plaintiff a copy of any updates to Plaintiff's credit reports following his First Disputes.

31. On or about April 18, 2024, Plaintiff mailed a second dispute letter to Equifax via certified mail ("Second Equifax Dispute Letter"). In this letter, Plaintiff stated he had mailed a letter to Equifax on February 21, 2024, disputing information that was reporting incorrectly on his credit report, but that he had never received a response. Plaintiff again disputed the Dingle Drive and Palm Street addresses, as well as the Account, as not his.

Plaintiff specifically asked Equifax to delete the incorrect addresses and Account from his credit report as they did not belong to him.

32. Equifax received Plaintiff's Second Dispute Letter on April 23, 2024 and thereafter forwarded same to Defendant CCS.

33. On or about April 18, 2024, Plaintiff mailed a second dispute letter to Experian via certified mail ("Second Experian Dispute Letter"). In this letter, Plaintiff stated he had mailed a letter to Experian on February 21, 2024, disputing information that was incorrectly reporting on his credit report, but that Experian had never responded. Plaintiff restated all of the incorrect information being reported as his, including several variations of the name Joshua Knox, ten incorrect addresses, over a dozen accounts including the Account, an incorrect social security number, multiple hard inquiries, and inaccurate employment information. Plaintiff specifically requested Experian to remove the incorrect information from his credit report.

34. Experian received Plaintiff's Second Dispute Letter on April 22, 2024, and thereafter forwarded a copy to Defendant CCS.

35. On or about April 18, 2024, Plaintiff mailed a second dispute letter to TransUnion via certified mail. ("Second TransUnion Dispute Letter"). In this letter, Plaintiff stated he had mailed a letter to TransUnion on February 21, 2024, disputing information that was reporting incorrectly on his credit report, but that TransUnion had never responded. Plaintiff again set forth all of the incorrect information being reported as his, including two addresses, five telephone numbers, and the Account, and asked TransUnion to remove all

of the disputed items from his credit report.

36.     TransUnion received Plaintiff's Second Dispute Letter on April 25, 2024, and thereafter forwarded same to Defendant CCS.

37.     On April 26, 2024, Equifax forwarded an ACDV to Defendant CCS. In the ACDV, Equifax notified Defendant CCS that Plaintiff disputed the Account as not his. Equifax also informed Defendant CCS that Plaintiff disputed the former addresses of 3220 S. Dingle Drive, Florence, SC 29505, and 542 S. Palm Street, Jesup, GA 31546.

38.     On or about April 27, 2024, Equifax sent Plaintiff a letter stating it was unable to locate a credit file in their database for Plaintiff with the identification information he provided, and thereby Equifax requested Plaintiff send two forms of identification: one verifying his Social Security number and the other verifying his current address. Plaintiff mailed Equifax the requested documentation on June 12, 2024.

39.     On April 30, 2024, in response to the ACDV from Equifax, Defendant CCS verified the Account as accurately reporting as belonging to Plaintiff and provided updated information on the Account. As a result, the Account continued to be reported as a collection account belonging to Plaintiff on his Equifax credit reports.

40.     On or about May 24, 2024, Plaintiff received a new copy of his TransUnion credit report and the Account had finally been deleted.

41.     On or about June 12, 2024, Plaintiff mailed a third dispute letter to Experian ("Third Experian Dispute Letter"). In this third letter, Plaintiff reiterated that he had already mailed two letters to Experian, and had still not received a response. Plaintiff also informed

Experian he tried to get his results through Experian.com, but the site told him his information did not match what was in their file. As a result, Plaintiff was denied access to Experian's investigation results. Plaintiff again disputed all of the incorrect information reporting on his Experian credit report, including the Account, and asked Experian to delete the information as it did not belong to him.

42.     Experian received Plaintiff's Third Dispute Letter on June 17, 2024, and thereafter forwarded an ACDV to Defendant CCS.

43.     On or about June 21, 2024, Equifax sent another ACDV to Defendant CCS. In the ACDV, Equifax again notified Defendant CCS that Plaintiff disputed the Account as not his. Equifax also informed Defendant CCS that Plaintiff also disputed the former addresses of 3220 S. Dingle Drive, Florence, SC 29505, and 542 S. Palm Street, Jesup, GA 31546.

44.     On July 8, 2024, Defendant CCS responded to the ACDV from Equifax verifying the Account as accurately reporting as belonging to Plaintiff and providing updated information on the Account. As a result, the Account continued to be reported as a collection account belonging to Plaintiff on his Equifax credit reports.

45.     On or about July 8, 2024, Plaintiff received Experian's dispute results wherein Experian informed Plaintiff that the former addresses on Dingle Drive and the Capital One account had been deleted. Unfortunately, the Account remained on Plaintiff's Experian credit report.

46.     On or about January 7, 2025, Plaintiff mailed a third dispute letter to Equifax via certified mail ("Third Equifax Dispute Letter"). In this letter, Plaintiff stated he had

9

previously mailed two letters to Equifax disputing information that was incorrectly reporting on his credit report, but had never received a response from Equifax. With his Third Dispute Letter, Plaintiff included a copy of the police report he filed regarding the Account.

47. Equifax received Plaintiff's Third Dispute Letter on January 10, 2025, and thereafter forwarded same to Defendant CCS.

48. On or about January 14, 2025, Equifax sent Plaintiff a second letter stating it was unable to locate a credit file in their database for Plaintiff with the identification information he provided. Accordingly, Plaintiff was informed he needed to again send in two forms of identification: one verifying his identity and the other verifying his current address. Plaintiff mailed the requested documentation on February 7, 2025.

49. On or about January 14, 2025, Equifax sent Defendant CCS an ACDV regarding Plaintiff's dispute of the Account.

50. On January 16, 2025, Defendant CCS responded to the ACDV verifying the Account as accurate. In addition, Defendant CCS continued to report the Account with the disputed address of 3220 S. Dingle Drive, Florence, SC 29505. As a result of Defendant CCS' verification of the Account, it continued to be reported as a collection account on Plaintiff's Equifax credit report.

51. On February 18, 2025, Equifax sent a fourth ACDV to Defendant CCS wherein Equifax informed Defendant CCS that Plaintiff disputed the Account as fraud.

52. On March 4, 2025, Defendant CCS responded to the ACDV from Equifax but did

not instruct Equifax to delete the Account.

53. As a result of Defendants' actions in reporting the Account as belonging to Plaintiff, Plaintiff's Experian credit file was mixed with a third party for over six months. During that time, Plaintiff's personal and credit information was provided to various third parties which were not authorized to obtain same. Specifically, a hard inquiry not authorized by Plaintiff was performed by NOWCOM/Good Deal Car Sal on March 25, 2024. Additionally, Plaintiff's inaccurate, mixed Experian credit file was viewed by Ceser SC, Clarity/CreditNinja, One Main, Cap One, AXCSSFN/CNGO, Santander Consumer, Progressive, and Srchamer/McLeod Health.

54. For at least eleven months, Plaintiff's Equifax credit file contained the inaccurate Account and two addresses which did not belong to Plaintiff. Despite receipt of at least four ACDVs from Equifax setting forth Plaintiff's disputes of the Account, Defendant CCS continued to verify the Account as accurate so that it would remain on Plaintiff's credit file.

55. While the Account continued to be reported on Plaintiff's Equifax credit file, his credit report was viewed by SC State Federal Credit Union, Ally Financial, Capital One, JPMCB – Auto Finance, Global Lending Services, LLC, Anderson Brothers Bank, Wells Fargo Dealer Services, Florence Toyota, Hyundai Motor Finance Corp, Consumer Portfolio Services, Simba LLC, Xactus, Equifax Mortgage Services, and First Heritage Credit.

56. While the Account was inaccurately reporting on Plaintiff's TransUnion credit file, Plaintiff's credit report was viewed by Capital One, Credit Wise, and JPMCB Auto Finance.

57.     During the time Plaintiff's Equifax, Experian, and TransUnion credit files were inaccurate and/or mixed due to Defendant CCS' ongoing reporting and verification of the Account, Plaintiff has been unable to move forward with trying to buy a home for his family.

58.     On January 7, 2025, Movement Mortgage reviewed Plaintiff's Equifax credit information via a soft pull and determined there was no way for Plaintiff to obtain a mortgage at that time.

59.     As of the date of the filing of this Complaint, Defendant CCS continues to wrongfully report the Account as belong to Plaintiff on Plaintiff's Equifax credit report which continues to harm Plaintiff's reputation and cause him damages.

## COUNT ONE
### (Fair Credit Reporting Act)

60.     The Plaintiff adopts the averments and allegations of paragraphs 12 through 59 hereinbefore as if fully set forth herein.

61.     The FCRA was created to protect consumers from the transmission of inaccurate information about them. *Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995).*

62.     The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

63.     As the principal, Defendant GEICO controls all aspects of its agent's, Defendant CCS', conduct in investigating disputes and reporting Defendant GEICO's accounts to the

credit reporting agencies. Therefore, Defendant GEICO has vicarious liability for all of Defendant CCS' FCRA violations.

64.     Defendants violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendants to the consumer reporting agencies.

65.     On at least one occasion within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendants had provided to a consumer reporting agency.

66.     On at least one occasion within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

67.     As a result of Defendants' violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages including, but not limited to, delay in seeking credit to purchase a home and loss of the home his family desired, lost opportunities to receive credit, damage to reputation and credit reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, family discord, loss of enjoyment of life, frustration, embarrassment, and humiliation. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

68.     Defendants completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA. Instead, Defendants simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as not his

and/or fraudulent.

69. The violations by Defendants were willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

70. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees from Defendants in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

71. The Plaintiff adopts the averments and allegations of paragraphs 12 through 70 hereinbefore as if fully set forth herein.

72. On one or more occasions within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendants' inaccuracies within Plaintiff's credit files with the credit reporting agencies and by failing to correctly report results of an accurate investigation to each credit reporting agency.

73. Defendants violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

74. Defendants violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account was inaccurate, incomplete, false, and

misleading.

75.     As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff has suffered and will continue to suffer actual damages including, but not limited to, delay in seeking credit to purchase a home and loss of the home his family desired, lost opportunities to receive credit, damage to reputation and credit reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, family discord, loss of enjoyment of life, frustration, embarrassment, and humiliation.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

76.     The violations by Defendants were willful, rendering Defendants liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n.  In the alternative, Defendants were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

77.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
**(Defamation, Libel and Slander)**

78.     The Plaintiff adopts the averments and allegations of paragraphs 12 through 77 hereinbefore as if fully set forth herein.

79.     Defendants willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large.  Said statements harmed Plaintiff's reputation and credit reputation, and caused Plaintiff physical sickness, mental anguish and emotional distress.

80. Said communications were false in that Plaintiff was not indebted to Defendants. Plaintiff did not owe any balance on the Account the subject of this action as it was the result of Defendant GEICO placing the past due balance of another consumer in Plaintiff's name and/or mixing Plaintiff's GEICO account with that of another consumer with a similar name.

81. Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff.

82. Defendant GEICO reported, transferred, sold and/or assigned the Account to Defendant CCS as Plaintiff's debt when it was not. Defendant GEICO had notice of its error and yet continued to insist that the Account was Plaintiff's debt.

83. Thereafter, Defendants undertook to collect the Account and reported said Account as collection account on Plaintiff's credit files. Plaintiff's credit files were viewed by numerous third parties.

84. Defendants communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

85. At the time said communications were made, Defendants knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

86. As a result of the intentional communications to the third parties of the false

information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large and was forced to endure credit reporting of the Account the subject of this action, in spite of the fact that Plaintiff did not owe the Account as same was not his debt.

87. As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to endure collection activities by Defendants, to have negative credit reports, to be held up to public ridicule or shame, to delay in seeking credit to purchase a home and loss of the home his family wanted to purchase, lost opportunities to receive credit, and made to suffer humiliation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, family discord, loss of enjoyment of life, frustration, embarrassment, and mental anguish for which he claims compensatory and punitive damages.

## COUNT FOUR
**(Violation of the Fair Debt Collection Practices Act)**
**As to Defendant The CCS Companies d/b/a Credit Collection Services**

88. Plaintiff hereby adopts all of the allegations set forth in paragraphs 12 through 87 as if set forth fully herein.

89. Within the one year prior to the filing of this lawsuit, Defendant CCS has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act with respect to the Plaintiff and an alleged consumer debt.

90. Defendant CCS is a debt collector as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

91. Defendant CCS communicated to a person credit information which was known, or

which should have been known to be false in violation of §1692e(8).

92.     As a proximate result of Defendant CCS' actions, the Plaintiff was caused to suffer worry, humiliation, fear, loss of sleep, anxiety, nervousness, family discord, loss of enjoyment of life, physical sickness, physical pain and mental anguish, harm to his credit, and loss of the home his family desired to purchase, for which he seeks the maximum statutory damages, actual damages, plus attorneys' fees and costs.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A.     Actual and statutory damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.     For relief in amounts or other appropriate relief as may be determined by the Court against Defendant CCS pursuant to 15 U.S.C. §1692 to include the Plaintiff's actual damages, statutory damages of one thousand ($1,000.00) dollars, as well as attorney's fees and costs;

E.     For compensatory and punitive damages in an amount to be determined by a struck jury for Defendants' defamation, libel and slander of Plaintiff;

F.     For this matter to be heard by a jury; and

G. For such other and further relief as this Court deems necessary and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed ID #10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL - RESTRICTED DELIVERY:**
GEICO
c/o Todd Combs, CEO
5260 Western Avenue
Chevy Chase, MD 20815

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL – RESTRICTED DELIVERY:**
The CCS Companies d/b/a Credit Collection Services
c/o Steven Sands, President and CEO
725 Canton Street
Norwood, MA 02062-2679