IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Joshua Dyson Carraway<br><br>Plaintiff,<br><br>vs.<br><br>Government Employees Insurance Company a/k/a GEICO, and Credit Control Services, Inc. d/b/a CREDIT COLLECTION SERVICES,<br><br>Defendants. | Case No.: 4:25-cv-11583-JD<br><br>**MEMORANDUM ORDER AND OPINION** |

Before the Court are Defendant Government Employees Insurance Company's ("GEICO" or "Defendants") Motion to Dismiss the Amended Complaint (DE 40) under Rule 12(b)(6), Fed. R. Civ. P., and Plaintiff Joshua Dyson Carraway's Request for Judicial Notice (DE 59). Plaintiff responded to the motion to dismiss (DE 46), GEICO replied (DE 52), and GEICO responded to the request for judicial notice (DE 60). For the reasons below, the Court grants in part and denies in part each request.

## I. BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint (DE 38). At this stage, the Court accepts Plaintiff's well-pleaded factual allegations as true and draws reasonable inferences in his favor.

### A. Factual Background

Plaintiff, Joshua Dyson Carraway ("Carraway" or "Plaintiff"), maintained insurance with Government Employees Insurance Company ("GEICO") during the

relevant period of this dispute. (DE 38 ¶¶ 6–11.) Sometime before January 3, 2024, GEICO allegedly placed a $360.18 past-due account belonging to an individual named Joshua Knox in Plaintiff's name. (*Id.* ¶ 12.) Plaintiff became aware of this mix-up when his GEICO car insurance premium increased from $53.00 per month to over $200.00 per month, prompting him to contact GEICO to ask why. (*Id.* ¶ 14.) After this, GEICO sold, assigned, and/or transferred Plaintiff's account with the default information of the other account attached to it to Defendant Credit Collection Services, a collections agency ("CCS"). (*Id.* ¶ 15.)

CCS then began reporting the account as belonging to Plaintiff to the consumer reporting agencies ("CRAs"), where the inaccurate account was added to Plaintiff's credit report, along with the incorrect name and several addresses of Joshua Knox. (*Id.* ¶ 16.) This caused Plaintiff's credit score to decrease. (*Id.* ¶¶ 17–19.)

Plaintiff alleges that, at GEICO's advisement, on January 23, 2024, he filed a police report regarding these discrepancies with the Florence County Sheriff's Office. (*Id.* ¶ 20.) CCS reported Plaintiff's information to Equifax, TransUnion, and Experian. (*Id.* ¶¶ 21–23.) On or about February 21, 2024, Plaintiff sent each of the CRAs a dispute letter, informing them that the account did not belong to him and that the historical contact information and addresses did not belong to him. (*Id.* ¶¶ 24–26.) Equifax then forwarded an Automated Consumer Dispute Verification ("ACDV") to CCS, triggering the statutory obligation of CCS to investigate the alleged errors. (*Id.* ¶ 27.) CCS verified the account as accurately belonging to Plaintiff. (*Id.* ¶ 28.)

On April 18, 2024, Plaintiff sent a second round of dispute letters to the CRAs, where each CRA forwarded the letters to CCS. (*Id.* ¶¶ 31–36.) Equifax then forwarded an ACDV to CCS, notifying CCS that Plaintiff disputed the account. (*Id.* ¶ 37.) Plaintiff then sent one more dispute letter to Experian on June 12, 2024, and Experian forwarded the ACDV to CCS. (*Id.* ¶¶ 41–42.) Plaintiff followed the same process with Equifax, sending a third dispute letter on January 7, 2025, which Equifax forwarded to CCS. (*Id.* ¶¶ 46–47.) Plaintiff alleges that CCS received ACDVs from these entities and, each time, confirmed that the account was accurate. (*Id.* ¶¶ 43, 44, 50, 52.) TransUnion deleted Plaintiff's account on May 24, 2024. (*Id.* ¶ 40.)

As a result, Plaintiff alleges that several financial institutions and third parties viewed his credit information, harming his credit score and preventing him from obtaining a mortgage to purchase a home. (*Id.* ¶¶ 53–58.) Plaintiff brought three causes of action against the Defendants: (1) Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b)(1)(A) and (B) for failing to investigate and review the accuracy of the information reported to CRAs; (2) Violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D) for publishing the inaccuracies contained in Plaintiff's account to CRAs and failing to notify those same CRAs that the account information was inaccurate, incomplete, false, and misleading; and (3) Defamation against Defendant for the publication of the reports that harmed Plaintiff's reputation and credit reputation. (*Id.* ¶¶ 60–87.)

**B. Procedural Background**

Plaintiff filed his initial Complaint (DE 1) against CCS and GEICO on August 27, 2025. Plaintiff later sought leave to amend solely to correct the identification of CCS, and the Court granted that request. Plaintiff filed the Amended Complaint on March 20, 2026. (DE 38.) After Plaintiff notified the Court that he had settled with CCS, the Court dismissed CCS on April 28, 2026. (DE 53.) GEICO is therefore the only remaining Defendant. GEICO moved to dismiss on April 3, 2026 (DE 40); Plaintiff responded on April 17, 2026 (DE 46); and GEICO replied on April 24, 2026 (DE 52). Plaintiff filed his Request for Judicial Notice on July 7, 2026 (DE 59), and GEICO responded on July 17, 2026 (DE 60). The matters are ripe for review.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the challenged pleading. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

## III. DISCUSSION

GEICO seeks dismissal of all three claims against it. As to Counts I and II, GEICO argues that the Amended Complaint identifies CCS—not GEICO—as the entity that reported the disputed account information to the consumer reporting agencies ("CRAs"), received the CRA dispute notices, and performed the challenged investigations. (DE 40-1 at 8–9; DE 52 at 9.) Plaintiff responds that GEICO may be liable because CCS allegedly acted as GEICO's agent when it reported an account labeled "CCS Collections for GEICO Indemnity Co." and handled Plaintiff's disputes. (DE 46 at 7–14.) As to Count III, GEICO argues that it did not publish the disputed information to a third party and that the claim is preempted by the FCRA. (DE 40-1 at 10–15; DE 52 at 13–16.) Plaintiff relies principally on the allegation that GEICO itself transferred the false debt information to CCS after learning of the account mix-up. (DE 46 at 14–23; DE 38 ¶ 82.) The Court addresses the request for judicial notice first and then each theory in turn.

**A. Plaintiff's Request for Judicial Notice (DE 59)**

Plaintiff asks the Court to take judicial notice of pleadings in *Brown v. LexisNexis Risk Solutions Inc.*, No. 5:25-cv-01097-FB (W.D. Tex.), in which GEICO admitted that it "regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." (DE 59 at 2–3.) GEICO does not oppose notice of the filing or its statement but argues that its status as a furnisher in other circumstances does not establish that it furnished Carraway's disputed information or received the CRA notices at issue here. (DE 60 at 4–5.)

Federal Rule of Evidence 201 permits judicial notice of an adjudicative fact only if it is "not subject to reasonable dispute" because it is generally known within the court's territorial jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Although courts may take judicial notice of court records, a statement appearing in a judicial filing does not make its truth indisputable. Pleadings and testimony may not be judicially noticed as true merely because they were filed with a court; a court may, however, notice that a party made a particular statement in a filed document without accepting the statement as true. *See* 21B *Wright & Miller's Federal Practice and Procedure* § 5106.4 (2d ed. 2026).

Accordingly, the Court takes judicial notice of the existence and contents of the *Brown* pleadings, including that GEICO made the statement identified by Plaintiff. The Court does not, by operation of Rule 201, take judicial notice that the statement

is substantively true. Nor does the statement resolve the dispositive question here: whether the Amended Complaint plausibly alleges that GEICO furnished Carraway's disputed account information to a CRA and received the CRA notice that triggered duties under § 1681s-2(b). Plaintiff's Request for Judicial Notice (DE 59) is therefore granted in part and denied in part.

**B. Direct FCRA Liability Against GEICO (Counts I and II)**

Section 1681s-2(b) imposes duties on a furnisher after the furnisher receives notice from a CRA that a consumer disputes information the furnisher provided. The Fourth Circuit has identified three essential elements of a failure-to-investigate claim: "(1) the plaintiff submitted a dispute over the accuracy of information on a credit report to a [CRA]; (2) the [CRA] notified the furnisher of that dispute; [and] (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025) (alterations in original); *see also* 15 U.S.C. § 1681s-2(b).

GEICO argues that Plaintiff's own chronology defeats direct liability because the Amended Complaint alleges that CCS reported the account, received the ACDVs, and repeatedly verified the account as accurate. (DE 40-1 at 8–9; DE 52 at 4.) Plaintiff responds that the account designation "CCS Collections for GEICO Indemnity Co." shows that the information was furnished by GEICO through CCS. (DE 46 at 7–10.) But that argument depends on Plaintiff's separate agency theory; it does not supply the missing allegations necessary for direct liability.

The specific factual allegations identify CCS at every material point in the statutory chain. Plaintiff alleges that, after GEICO "sold, assigned, and/or transferred" the account to CCS for collection, "CCS began reporting the Account as belonging to Plaintiff to the credit reporting agencies." (DE 38 ¶¶ 15–16.) Plaintiff further alleges that the CRAs forwarded his disputes and ACDVs to CCS, and that CCS responded by verifying the account. (*Id.* ¶¶ 24–28, 31–44, 46–52.) The Amended Complaint does not plausibly allege that GEICO itself furnished the disputed account information to a CRA or that any CRA notified GEICO of Carraway's dispute. The *Brown* pleading does not fill either gap; at most, it shows that GEICO has described itself as a furnisher in another factual setting.

Accordingly, Counts I and II fail to state a direct claim against GEICO under § 1681s-2(b).

### C. Vicarious FCRA Liability Based on CCS's Conduct (Counts I and II)

Plaintiff alternatively contends that GEICO is liable for CCS's alleged FCRA violations under agency principles. He argues that vicarious liability is consistent with the FCRA, relying principally on *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987). He alleges that GEICO controlled CCS's collection, reporting, and dispute-investigation activity. (DE 46 at 10–14; DE 38 ¶¶ 10–11, 63.) GEICO responds that the FCRA does not expressly address vicarious liability, that *Yohay* did not decide the precise § 1681s-2(b) issue presented here, and that the agency allegations are conclusory in any event. (DE 52 at 9–13.) The Court need not decide the broader statutory question. Even assuming without deciding that

traditional agency principles may support derivative liability under § 1681s-2(b), the Amended Complaint does not plausibly allege an agency relationship as to the FCRA functions at issue.

Actual agency requires more than labels. South Carolina describes agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Froneberger v. Smith*, 748 S.E.2d 625, 631 (S.C. Ct. App. 2013) (quoting Restatement (Third) of Agency § 1.01 (2006)). At the pleading stage, the Court accepts well-pleaded facts, but not "labels and conclusions" or a "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

The Amended Complaint alleges that GEICO "acted as principal over its agent, Defendant CCS," "maintained control over all actions taken by Defendant CCS," and "controls all aspects" of CCS's investigation and reporting. (DE 38 ¶¶ 11, 63.) Those statements largely recite the conclusion Plaintiff asks the Court to draw. Plaintiff points to three additional facts: GEICO transferred the account to CCS; CCS reported the account as "CCS Collections for GEICO Indemnity Co."; and GEICO advised Carraway to file a police report after he learned of the account mix-up. (DE 46 at 12–14; DE 38 ¶¶ 13, 15, 20.) GEICO argues that those allegations may show a continuing interest in the account but do not show a right to control CCS's performance of the FCRA duties at issue. (DE 52 at 5–8.) The Court agrees.

The pertinent inquiry is control over the conduct that allegedly violated § 1681s-2(b): handling CRA disputes and ACDVs, investigating those disputes, making

verification decisions, and reporting back to the CRAs. The Amended Complaint alleges no facts about contractual authority, reporting protocols, approval rights, investigation instructions, audit rights, or comparable mechanisms by which GEICO could direct how CCS performed those functions. The transfer of an account for collection does not itself plausibly establish that right of control, and GEICO's alleged instruction to Carraway to file a police report concerns Carraway—not CCS's investigation or reporting process.

Apparent authority fails for a different reason. *Yohay* itself stated that apparent-authority liability depends on whether "the plaintiff or a third party relied upon the principal's representations which created apparent authority." 827 F.2d at 973. More recently, the South Carolina Court of Appeals reiterated that apparent agency requires a representation by the purported principal, reasonable reliance by the third party, and a detrimental change of position. *Royal v. Free Kindergarten Ass'n of Charleston*, 914 S.E.2d 856, 864–65 (S.C. Ct. App. 2025). "The proper focus," the court explained, "is not on the relationship between the principal and the agent, but on that between the principal and the third party," and "[a]n agency may not be established solely by the declarations and conduct of an alleged agent." *Id.* at 865 (quoting *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 540 S.E.2d 113, 118 (S.C. Ct. App. 2000)).

Plaintiff relies on CCS's description of the account as "CCS Collections for GEICO Indemnity Co." as evidence of apparent authority. (DE 46 at 13–14.) But that is a representation by CCS, the alleged agent, not a manifestation by GEICO. The

Amended Complaint identifies no representation by GEICO to Carraway or a CRA that CCS was authorized to act for GEICO in investigating CRA disputes, and it alleges no reliance on such a GEICO manifestation. Apparent authority therefore is not plausibly pleaded.

Because the Amended Complaint does not plausibly allege either actual agency or apparent authority as to CCS's FCRA functions, the derivative theory does not save Counts I and II. GEICO's Motion to Dismiss is granted as to Counts I and II, which are dismissed without prejudice as to GEICO.

**D. Defamation (Count III)**

GEICO next argues that Count III fails because the Amended Complaint attributes the CRA reporting to CCS, not GEICO, and because vague references to publication to "the public at large" do not identify a cognizable publication by GEICO. (DE 40-1 at 10–11.) In reply, GEICO further characterizes Plaintiff's GEICO-to-CCS publication theory as new and unpleaded and argues, alternatively, that communications to a debt collector assisting with collection should not count as publication. (DE 52 at 15–16.) Plaintiff responds that paragraph 82 expressly alleges that GEICO communicated the false debt to CCS and that South Carolina defamation law requires publication to a third party, not publication specifically to a CRA. (DE 46 at 14–18.)

Under South Carolina law, defamation requires "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective

of special harm or the existence of special harm caused by the publication." *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012) (quoting *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006)).

The direct GEICO-to-CCS theory is pleaded. Paragraph 82 alleges: "Defendant GEICO reported, transferred, sold and/or assigned the Account to Defendant CCS as Plaintiff's debt when it was not. Defendant GEICO had notice of its error and yet continued to insist that the Account was Plaintiff's debt." (DE 38 ¶ 82.) Read with the factual allegations that GEICO placed the Knox debt in Carraway's name and then transferred the account to CCS for collection, the pleading plausibly alleges a false factual communication by GEICO to a separate corporate entity. (*Id.* ¶¶ 12–16.) It therefore is not a theory raised for the first time in Plaintiff's opposition.

The pleading also sufficiently alleges fault in the publication. GEICO emphasizes that the Amended Complaint does not allege GEICO knew of the mistake when the account was first placed in Carraway's name. (DE 52 at 16.) But Count III is not sustained merely by fault in making the initial account error. Paragraph 82 alleges that GEICO had notice of the error and nevertheless communicated or transferred the account to CCS as Carraway's debt and continued to insist the debt was his. (DE 38 ¶ 82.) At Rule 12(b)(6), that allegation plausibly supplies at least the required fault in the publication. Plaintiff also alleges reputational and credit-related harm, including inability to obtain a mortgage. (*Id.* ¶¶ 57–58, 81, 86–87.)

GEICO's out-of-state authorities concerning communications to debt collectors do not justify a categorical no-publication rule under South Carolina law at this stage.

(DE 52 at 15–16.) In *McBride v. School District of Greenville County*, the South Carolina Court of Appeals recognized that even "an employee's statement to another employee is a 'publication' when the privilege of the employees' common interest is abused." 698 S.E.2d 845, 853 (S.C. Ct. App. 2010). The court also treated qualified privilege as an affirmative defense. *Id.* The Supreme Court of South Carolina has explained that a qualified privilege may be abused by "a statement made in reckless disregard of the victim's rights." *Fountain*, 730 S.E.2d at 310 (quoting *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 486, 514 S.E.2d 126, 135 (S.C. 1999)). Because CCS is alleged to be a separate entity and the complaint alleges knowing or reckless communication of a false debt, dismissal on a categorical no-publication or privilege theory is not warranted on the pleadings.

The Court therefore concludes that Count III plausibly states a defamation claim based on GEICO's own alleged communication of the false debt information to CCS. Because that direct theory is sufficient to survive the motion, the Court does not decide whether GEICO may also be held vicariously liable for CCS's subsequent publications to the CRAs.

**E. FCRA Preemption of the Surviving Defamation Theory**

GEICO separately argues that Count III is preempted under 15 U.S.C. §§ 1681h(e) and 1681t(b)(1)(F). (DE 40-1 at 11–15; DE 52 at 12–13.) Plaintiff responds that his common-law claim survives because he alleges malice or willful intent and because GEICO cannot simultaneously disclaim furnishing the disputed information to the CRAs while invoking FCRA preemption for a separate GEICO-to-CCS

communication. (DE 46 at 18–23.) The Court need not resolve every question concerning the interaction of the FCRA's preemption provisions to decide this motion.

Section 1681t(b)(1)(F) preempts state-law requirements or prohibitions "with respect to any subject matter regulated under . . . section 1681s-2," which concerns the responsibilities of persons who furnish information to CRAs. 15 U.S.C. § 1681t(b)(1)(F). In *Ross v. F.D.I.C.*, the Fourth Circuit held a state-law claim preempted because it concerned "WaMu's reporting of inaccurate credit information to CRAs, an area regulated in great detail under § 1681s-2(a)–(b)." 625 F.3d 808, 813 (4th Cir. 2010).

The narrow theory that survives here is materially different. It concerns GEICO's alleged communication of the debt to CCS when GEICO transferred the account for collection, not GEICO's furnishing of the disputed information to a CRA or GEICO's response to a CRA dispute notice. Indeed, GEICO's direct-liability position is that it did not perform either of those CRA-facing functions in this case. (DE 40-1 at 8–9.) On the pleadings before the Court, GEICO has not shown that imposing state-law liability for that distinct GEICO-to-CCS communication imposes a "requirement or prohibition" with respect to the subject matter regulated by § 1681s-2. Section 1681t(b)(1)(F) therefore does not require dismissal of this narrow theory at this stage.

Nor does § 1681h(e) require dismissal on the present pleadings. Even assuming without deciding that § 1681h(e) reaches the GEICO-to-CCS communication, its text preserves claims based on "false information furnished with malice or willful intent

to injure" the consumer. 15 U.S.C. § 1681h(e). *Ross* recognized that malice includes publication "with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity." 625 F.3d at 815 (quotation omitted). Here, paragraph 82 alleges that GEICO had notice of the account error and nevertheless communicated or transferred the account as Carraway's debt and continued to insist it was his; paragraph 85 alleges knowledge or reckless disregard of falsity. (DE 38 ¶¶ 82, 85.) Rule 9(b) permits malice and other conditions of mind to be alleged generally. These allegations are sufficient to defeat dismissal on § 1681h(e) grounds at the pleading stage. Whether Plaintiff can ultimately prove the requisite state of mind is not before the Court.

Accordingly, GEICO's Motion to Dismiss is denied as to Count III.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Request for Judicial Notice (DE 59) is **GRANTED IN PART and DENIED IN PART**. The Court takes judicial notice of the existence and contents of the *Brown* pleadings, including that GEICO made the statement identified by Plaintiff, but does not take judicial notice of the truth of the factual assertion contained in that statement.

GEICO's Motion to Dismiss (DE 40) is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** as to Counts I and II, and those claims are **DISMISSED WITHOUT PREJUDICE** as to GEICO. The Motion is **DENIED** as to Count III. Count III survives on the direct theory that GEICO itself allegedly communicated the false debt information to CCS after receiving notice of the account

error. The Court does not decide at this stage whether GEICO may also be held vicariously liable for any subsequent publication by CCS.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 17, 2026